UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

STEPHANIE K. TACKETT,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)　　　　No. 6:25-CV-40-HAI
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　MEMORANDUM OPINION
FRANK J. BISIGNANO,　　　　　　)　　　　　& ORDER
*Commissioner of Social Security*,　)
　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　)

*** *** *** ***

In June 2022, Plaintiff Stephanie Kennedy Tackett filed a Title II application for disability insurance benefits and Title XVI application for supplemental security income. *See* D.E. 8 at 19.[1] She alleged disability beginning April 2, 2022. *Id*. The Social Security Administration denied Tackett's claims initially and upon reconsideration. *Id*. Then, on January 31, 2024, Administrative Law Judge ("ALJ") Lauren K. Tran conducted a telephonic administrative hearing. The ALJ heard testimony from Tackett (represented by attorney Vickie Aukerman) and impartial vocational expert ("VE") Ralph Crystal. *Id*. Tackett was found to not be disabled during the relevant period, April 2, 2022, to May 2, 2024, the date of the decision. *Id*. at 30. The Appeals Council denied review on January 29, 2025. *Id*. at 1.

On March 5, 2025, Tackett (with different counsel) brought this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's 2024 decision denying her application for disability insurance benefits and supplemental security income. The parties filed briefs, including a reply. D.E. 11, 16, 17. In June 2025, the parties consented to the referral of

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.

this matter to a magistrate judge. D.E. 13. The matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 14. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's request to remand these proceedings.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case.

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Tackett "has not engaged in substantial gainful activity since April 2, 2022, the alleged onset date." D.E. 8 at 21.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). In this case, the ALJ found Tackett had the severe impairments of "carpal tunnel syndrome, cervical degenerative disc disease, depression, anxiety, schizophrenia, and post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c))." D.E. 8 at 21. Tackett does not argue the ALJ should have identified additional severe impairments.

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled.  20 C.F.R. § 404.1520(d).  The ALJ found Tackett failed to meet this standard.  D.E. 8 at 23.  The ALJ considered several listings but found none of them satisfied in Tackett's case.  *Id*.  Relevant to this appeal, the ALJ considered mental impairments under Listings 12.03, 12.04, 12.06, and 12.15.  *Id*.  Tackett does not appear to challenge this determination that she fails to meet or medically equal the criteria for any of these listings.  Her briefing nowhere addresses the elements of these or any other listed impairments.

Some aspects of the ALJs' step-three consideration of potential mental impairments are relevant to the parties' arguments.  The ALJ considered the four different domains of the "paragraph B criteria" and found that Tackett has "moderate limitation" in all four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting or managing oneself.  D.E. 8 at 24.  In these analyses, the SSA uses a five-point rating scale of increasing limitation "consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The regulations define these five levels of limitations as follows:

a.    No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b.    Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c.    Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d.    Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F.

Thus, the ALJ found Tackett had moderate (*i.e.*, mid-range or "fair") limitations in all four mental-impairment domains. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00, describing "Mental Disorders." Tackett particularly focuses on two of the four domains. The first is concentrating, persisting, or maintaining pace. The regulations describe this domain as follows:

> Concentrating, persisting, or maintaining pace. This area of mental functioning refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00(G)(3)(b)(iii) ("Neurological Disorders").

Tacket also focuses on her moderate limitation in adapting or managing oneself:

> Adapting or managing oneself. This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00(G)(3)(b)(iv) ("Neurological Disorders").

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is his maximum ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, can occasionally crawl; can frequently handle, finger, and feel bilaterally; can tolerate exposure to extreme cold and extreme heat; can tolerate occasional exposure to vibration; should not be exposed more than frequently to concentrated exposure to atmospheric conditions as defined in the SCO of the Dictionary of Occupational Titles; should not be exposed to dangerous moving machinery or unprotected heights. Mentally, the claimant [can] understand, remember, and carry out simple instructions and perform simple tasks; can occasionally interact with supervisors, coworkers, and the public.

D.E. 8 at 24-25.

Tackett objects to this RFC finding. She argues the ALJ erred in either not including additional work limitations based on her mental impairments or in failing to adequately explain why such mental-impairment-based limitations were not included in the RFC. D.E. 11. She also faults the ALJ for not adopting one medical provider's finding that she has "moderate to marked limitations in her ability to tolerate stress and pressures of day-to-day employment." *Id*. at 16.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of the claimant's residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Tackett had past relevant work as a dollar store cashier, stocker, home attendant, security guard, factory worker, grocery store/deli worker, and loader at Walmart. D.E. 8 at 29.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is

not disabled.  20 C.F.R. § 404.1520(g).  The ALJ found Tackett was not disabled at this step.
D.E. 8 at 29.  The ALJ asked the vocational expert "whether jobs exist in the national economy
for an individual with Mr. Tackett's age, education, work experience, and residual functional
capacity."  *Id*. at 30.  The expert provided a list of jobs including inspections, hand packaging,
cashier, and clerical.  *Id*.  Because sufficient work existed in the national economy that Tackett
could perform, the ALJ found her "not disabled" as defined by the regulations.  *Id*.

## II.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in
'substantial gainful activity' because of a medically determinable physical or mental impairment
of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th
Cir. 2007).  Judicial review of the denial of a claim for Social Security benefits is limited to
determining whether the ALJ's findings are supported by substantial evidence and whether the
correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.
2007).  "Substantial evidence" is "more than a scintilla of evidence but less than a
preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.
1994).  The substantial evidence standard "presupposes that there is a zone of choice within
which decision makers can go either way, without interference from the court."  *Mullen v.
Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a
whole.  *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524,
535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de
novo* review, resolve conflicts in evidence, or make credibility determinations.  *Id.* (citations

omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id.* § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[3] It is within the province of the ALJ, rather than the reviewing court, to evaluate

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).  Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.  Here, Tackett does not appear to directly challenge any finding by the ALJ concerning Tackett's own credibility.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

### III.  Mental-Health Limitations

Tackett argues that, although the ALJ found moderate limitation in (1) concentration, persistence, or pace, and (2) adapting or managing oneself, she erred by failing to include in the RFC any limitations accounting for these moderate limitations. D.E. 11 at 14-20.[4]

As noted, at step three, the ALJ found "moderate" limitation in all four domains of the "Paragraph B" mental-health criteria. D.E. 8 at 23-24.  Under the regulations, to say that Tackett has "moderate" limitations means that her mental capabilities in each domain are "fair," which falls in between "slightly limited" and "seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F2.

Tackett argues the RFC "does not contain any limitations accounting for moderate limitations in concentration, persistence, or pace." D.E. 11 at 15.  And the RFC contains "no adaptive limitation language." *Id*. at 18.

---

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

[4] For the parties' briefs, page number references are to the blue numbers generated by ECF.

However, the ALJ's "light work" RFC includes additional restrictions:  "Mentally, the claimant [can] understand, remember, and carry out simple instructions and perform simple tasks; can occasionally interact with supervisors, coworkers, and the public."  D.E. 8 at 25.  It is reasonable to conclude that (1) limiting Tackett to only "simple" instructions and tasks and (2) limiting Tackett to only occasional interaction with other people are limitations designed to address Tackett's moderate deficiencies in concentration, persistence, pace, and adaptation.  On this record, the Court cannot find that the RFC is unsupported by substantial evidence on this issue.

Nor is it necessary for an RFC to include specific restrictions when moderate mental limitations are present.  An ALJ "is required to consider the effects of both severe and non-severe impairments in determining the RFC."  *Kohne v. Kijakazi*, No. 2:23-CV-37-DCR, 2023 WL 5220853, at *4 (E.D. Ky. Aug. 14, 2023).  However, findings made at earlier steps do not automatically carry over into the RFC.  *Richardson v. Saul*, 511 F. Supp. 3d 791, 798 (E.D. Ky. 2021).  In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC.  *Karen Marie M. v. Kijakazi*, No. 2:20-CV-416-DCN-REP, 2021 WL 6010422, at *6 (D. Idaho Nov. 19, 2021), *recommendation adopted*, 2021 WL 5999132 (D. Idaho Dec. 20, 2021) (citing *Taylor v. Berryhill*, No. 17-CV-11444, 2018 WL 3887521, at *6 (E.D. Mich. July 5, 2018), *recommendation adopted*, 2018 WL 3870066 (E.D. Mich. Aug. 15, 2018)).  "Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work."  *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *6 (S.D. Ohio Aug. 21, 2017), *recommendation adopted*, 2017 WL 4222983 (S.D. Ohio Sept. 21, 2017).

Tackett argues that her moderate limitations would be equivalent to needing 20% to 30% of time off work. D.E. 11 at 15-16. She notes that the VE testified that if she had to be "off task for more than 15 percent of the time," this would "preclude work activities independent of the other restrictions." *Id.*, *citing* D.E. 8 at 69. But "moderate impairments are not quantified in the regulations." *Jarrell v. O'Malley*, No. 3:23-CV-00078-EBA, 2024 WL 4357556, at *7 (E.D. Ky. Sept. 30, 2024). And Tackett points to no case wherein a court in this Circuit held that a finding of moderate limitation in concentration/persistence/pace or adaptation necessarily translates into RFC limitations. *See Francis v. Kijakazi*, No. 7:22-CV-104-HAI, 2023 WL 8440258, at *7 (E.D. Ky. Dec. 5, 2023).

Tackett quotes a Michigan case in which a magistrate judge surmises that a moderate limitation in concentration would mean that the claimant would be "drifting off task 20%-30% of the time." *Green v. Comm'r of Soc. Sec.*, No. 08-CV-11398-DT, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009). But *Green* has received significant pushback in subsequent decisions.

> *Green*'s suggestion that a moderate limitation in concentration, persistence, and pace renders a plaintiff *per se* disabled has been rejected. *See England v. Comm'r of Soc. Sec.*, 2016 WL 8114219 at *13 (E.D. Mich. 2016) (collecting cases where *Green* was either rejected or used without further analysis), *recommendation adopted*, 2016 WL 5939288 (E.D. Mich. 2016).

*Alvarado v. Comm'r of Soc. Sec.*, No. 20-11717, 2021 WL 1398229, at *13 (E.D. Mich. Feb. 18, 2021); *see also Coney v. Comm'r of Soc. Sec.*, No. 1:12-CV-800, 2014 WL 642225, at *13 (W.D. Mich. Feb. 19, 2014) (declining to interpret *Green* as holding that moderate limitations in concentration, persistence, or pace would be work preclusive). And post-*Green* courts in the same District have "concluded that a limitation to simple, repetitive work can be adequate to address a moderate limitation in CPP." *Kelly v. Comm'r of Soc. Sec.*, No. 2:15-CV-12326, 2016

WL 8115402, at *6 (E.D. Mich. July 22, 2016), *recommendation adopted*, 2016 WL 4868532 (E.D. Mich. Sept. 15, 2016).

Here, the ALJ explained in her RFC analysis that Tackett's mental-health records "demonstrate[] no more than moderate mental limitations, which are accommodated by limiting the claimant to work in which the claimant [can] understand, remember, and carry out simple instructions and perform simple tasks; can occasionally interact with supervisors, coworkers, and the public." D.E. 8 at 27. The ALJ further explained:

> The moderate limitations are consistent with the claimant's relatively normal findings during her counseling sessions, despite her reports of hallucinations. They are consistent with the lack of inpatient or emergency mental health treatment, and the claimant's continued ability to manage her own finances.
>
> . . . .
>
> [Further, Dr. Easton-Hogg's] opinion showing moderate limitations is generally well-supported by the underlying examination, and consistent with the evidence. However marked limitations in adapting are unsupported, and are inconsistent with the medical evidence of record showing the claimant can manage her own finances and medication, and has not required inpatient or emergency mental health treatment. The moderate limitations are consistent with the opinions of the state agency mental consultants. The undersigned notes the claimant did not present any medical opinions indicating she has more stringent mental limitations.

*Id.* at 28.

The ALJ here did not ignore Tackett's moderate limitations. Instead, the ALJ took those limitations specifically into account when crafting the RFC. *See Miller v. O'Malley*, No. 5:23-CV-209-HAI, 2024 WL 315685, at *6 (E.D. Ky. Jan. 26, 2024). This fact distinguishes Tackett's case from many of the cases she cites in her briefs. The RFC accordingly is not unsupported by substantial evidence on this ground. This is not a case where the Court "simply cannot discern [why the RFC omits mental limitations] because the ALJ did not in any way

address the matter." *Richardson*, 511 F. Supp. 3d at 799. Nor is this a case where the ALJ made "no mention of the claimant's mental impairment in the RFC analysis." *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), *recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017).

Tackett argues there is no specifically "adaptive language" in the RFC. D.E. 17 at 4. Again, there is no requirement that moderate mental-health limitations be incorporated into the RFC. *Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at *6 (6th Cir. Dec. 13, 2017); *Jarrell*, 2024 WL 4357556, at *5 (citing *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3 (6th Cir. Jan. 31, 2020)). And it is not clear to the Court that limiting Tackett to simple instructions, simple tasks, and only occasional interaction with others would fail to address her moderate limitations in adaptation.

Although the ALJ here could have done things differently, her RFC is not outside the zone of appropriate choices under the substantial-evidence standard.

## IV. Dr. Easton-Hogg

Tackett takes issue with the ALJ's rejection of Dr. Easton-Hogg's opinion that she had "moderate to marked limitation in tolerating stress." D.E. 11 at 20-22. Dr. Easton-Hogg provided a consultative examination in November 2022, and the records are available as Exhibit 8F (D.E. 8 at 575-79). First, Dr. Hogg's materials define the relevant terms:

FUNCTIONAL CAPACITIES:

Mild:       There is mild limitation in this area, but the individual can generally function well.

Moderate:   There is moderate limitation in this area, but the individual is still able to function satisfactorily.

Marked:     There is serious limitation in this area. The ability to function is severely limited, but not precluded.

Extreme:      There is major limitation in this area.  There is no useful ability to function in this area.

*Id*. at 578.  Second, Dr. Easton-Hogg relayed his findings regarding Tackett:

1.     The claimant's capacity to understand and remember instructions towards the performance of simple tasks appears affected by symptoms to a mild-moderate degree.

2.     Ability to sustain concentration and have persistence to carry out simple instructions appears affected by these impairments to a moderate degree.

3.     Capacity to respond appropriately to supervisors, coworkers and the public appears affected by these impairments to a moderate degree.

4.     **Ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a moderate-marked degree.**

*Id*. (emphasis added).

The ALJ's opinion addressed Dr. Easton-Hogg's findings while explaining the RFC:

Dr. Edd Easton-Hogg concluded the claimant had mild to moderate limitation in understanding and remembering, moderate limitation in concentration and responding to others, and moderate to marked limitation in tolerating stress.  (Exhibit 8F).  This opinion is somewhat persuasive.  The majority of the opinion showing moderate limitations is generally well-supported by the underlying examination, and consistent with the evidence.  However marked limitations in adapting are unsupported, and are inconsistent with the medical evidence of record showing the claimant can manage her own finances and medication, and has not required inpatient or emergency mental health treatment.  The moderate limitations are consistent with the opinions of the state agency mental consultants.  The undersigned notes the claimant did not present any medical opinions indicating she has more stringent mental limitations.

D.E. 8 at 28.

Tackett argues the ALJ's discussion here "greatly oversimplified" the issues and did not explain why the "marked" limitation was "unsupported."  D.E. 11 at 20.  However, the ALJ explained that a "moderate" finding concerning adaptation (or stress tolerance) was "consistent with the opinions of the state agency mental consultants" and no other opinions in the record

found disabilities beyond "moderate." Finally, the ALJ also gave some weight to the fact that Tackett testified she manages her own finances and medicine and that she did not receive inpatient mental-health treatment during the relevant period.

While another ALJ might have assessed the record differently, the ALJ's discussion here is not so vapid or irrational as to be unsupported by substantial evidence. Tackett argues that she does not actually manage her own medications because she uses an alarm on her phone, and her father and daughter routinely call her to confirm she has taken her medication. D.E. 11 at 21. And Tackett says her management of her finances is minimal, as she has been "living with others for ten years" (*id.*) and "has no real finances to manage" (D.E. 17 at 7). Tackett also notes she had a mental-health hospitalization "for delusions six years prior to the evaluation." D.E. 11 at 22. Assuming these assertions are correct, they do not undermine the ALJ's analysis, as the ALJ stressed that "moderate limitations are consistent with the opinions of the state agency mental consultants[. And Tackett] did not present any medical opinions indicating she has more stringent mental limitations." D.E. 8 at 28. Even if the Court were to disregard the ALJ's statements about Tackett managing her finances and medication (and not being hospitalized), the ALJ provided sufficient analysis to survive substantial-evidence review.

## V. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED THAT** the ALJ's decision is **AFFIRMED**. Plaintiff's request to remand (D.E. 11) is **DENIED**. Judgment will be entered in favor of the Commissioner by separate contemporaneous order.

This the 22nd day of October, 2025.



Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**